## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

PRM GROUP, INC.

                Plaintiff,

                v.

TIMOTHY RAJU MAHAJAN and PARALEGAL
BOOTCAMP LLC

                Defendants.

Case No. 8:25-cv-1077

**VERIFIED COMPLAINT**

JURY TRIAL DEMANDED

      Plaintiff PRM Group, Inc. ("PRM" or "Plaintiff"), by and through its attorneys Holland & Knight LLP, files this Complaint against Defendants Paralegal Bootcamp LLC (the "LLC") and Timothy Raju Mahajan ("Mahajan") (the LLC and Mahajan, collectively, "Defendants"), alleging as follows:

## PRELIMINARY STATEMENT

For nearly 15 years, Plaintiff – known as Paralegal Boot Camp – has provided training to paralegals across the U.S. Plaintiff markets and provides its services via its Paralegal Bootcamp website (accessible at paralegal-bootcamp.com) under its Paralegal Boot Camp and Paralegal Bootcamp marks, including the following:



In the summer of 2023, Defendants adopted Plaintiff's Paralegal Bootcamp name and mark to launch their own paralegal training business, marketed and operated since the winter of 2023-2024 via its own Paralegal Bootcamp website (paralegalbootcamp.us).

Plaintiff discovered Defendants' infringing use in April 2024 and, citing its incontestable registration for Plaintiff's PARALEGAL BOOT CAMP mark, demanded they stop. In response, Defendant insisted that "anyone may use the mark" and invited Plaintiff to file this Complaint. Given Defendants' silence to respond to Plaintiff's subsequent efforts to resolve this matter, and its continuing flagrant and willful infringement of Plaintiff's rights, Plaintiff is left with no choice but to accept Defendant's invitation.

This is a case for trademark infringement, unfair competition, and cybersquatting. Defendants have usurped Plaintiff's Paralegal Boot Camp brand and identity, for their own unjust benefit and to Plaintiff's irreparable and continuing damage, and by this suit, Plaintiff seeks recovery and redress. Plaintiff – at Defendants' express invitation – takes this action to bring

Defendant's willful infringement and bad-faith acts to an immediate and permanent end, and to recover from Defendant the unjust gains reaped and the undue damage dealt by its blatant theft.

## PARTIES

1.    Plaintiff is a Florida corporation with a principal place of business at 474 Poinciana Court, Satellite Beach, Florida 32937.

2.    Paralegal Bootcamp LLC is a Maryland limited liability company with a principal place of business at 4520 East West Highway, Suite 700, Bethesda, Maryland 20814.

3.    Upon information and belief, Defendant Timothy Raju Mahajan is an individual residing in the State of Maryland and conducting business at 4520 EastWest Highway, Suite 700, Bethesda, Maryland 20814.

## JURISDICTION AND VENUE

4.    This is a civil action for trademark infringement and related claims under the Lanham Act, 15 U.S.C. § 1051 *et seq.*; therefore, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a) and 15 U.S.C. § 1121.  Additionally, this Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a) insofar as these claims are so related to the federal claims in the action that they form part of the same case or controversy.

5.   This Court has personal jurisdiction over the Defendants because they are formed in and/or reside in and/or have continuous and systematic contacts with Maryland; and the claims arise from Defendants' contacts with Maryland.

6.    Venue is properly placed in this district pursuant to 28 U.S.C. § 1391 because Defendants have committed and intend to continue committing acts of infringement here.

## FACTUAL BACKGROUND

### A. Plaintiff's Rights

7.      Plaintiff is the owner of the service marks **PARALEGAL BOOT CAMP** (the "PARALEGAL BOOT CAMP Mark") and **PARALEGAL BOOTCAMP** (the "PARALEGAL BOOTCAMP Mark", and together with the PARALEGAL BOOT CAMP Mark, the "PBC Marks"), which Plaintiff uses in connection with educational and training services, including live and online courses, seminars, workshops, and conferences, for paralegals and other legal professionals ("Plaintiff's Services"). Additional information regarding Plaintiff and its services is available at Plaintiff's websites, accessible at paralegal-bootcamp.com and paralegal-bootcamp.thinkific.com, true and accurate screenshots of selected pages from which are attached hereto as **Exhibit A**.

8.      Plaintiff is the owner of all right, title and interest in and to each of its PBC Marks. Plaintiff has used its PARALEGAL BOOT CAMP Mark in U.S. commerce since at least as early as 2011, and its PARALEGAL BOOTCAMP Mark in U.S. commerce since at least as early as 2011, in connection with, *inter alia*, Plaintiff's Services.

9.      As a result of Plaintiff's widespread use, advertising, and promotion of Plaintiff's Services under the PBC Marks, each of the Marks has become a distinctive indicator of the origin of Plaintiff's services, has acquired a favorable reputation among relevant members of the purchasing public, and has become a valuable symbol of Plaintiff's goodwill.

10.     As a result of Plaintiff's widespread use, advertising, and promotion of Plaintiff's Services under the PBC Marks, Plaintiff has a strong commercial interest in its Marks.

11.     Plaintiff is the owner of a federal registration for its PARALEGAL BOOT CAMP Mark, Registration No. 4595407, for "Educational services, namely, conducting seminars,

conferences, workshops and continuing education classes in the field of paralegal education and distributing materials in connection therewith" in Class 41, issued September 2, 2014 (the "Registration"). The Registration resided on the Principal Register and, from July 28, 2020, through March 3, 2025, was incontestable. Though Plaintiff continues to make widespread use of its PARALEGAL BOOT CAMP Mark, the Registration was inadvertently cancelled on March 14, 2025, due to an unintentional failure to timely file required maintenance and renewal documents under Sections 8 and 9 of the Trademark Act.[1] Attached hereto as **Exhibit B** are materials downloaded from the U.S. Patent and Trademark Office's Trademark Status & Document Retrieval online database showing the U.S. Patent and Trademark Office acknowledged Plaintiff's declaration of incontestability under 15 U.S.C. § 1065 for the PARALEGAL BOOT CAMP Registration on July 28, 2020, and showing the current status of the PARALEGAL BOOT CAMP Registration.

12.    The Registration provides conclusive evidence of Plaintiff's ownership of the subject PARALEGAL BOOT CAMP Mark, of the validity of the subject PARALEGAL BOOT CAMP Mark, and of Plaintiff's exclusive right to use the subject PARALEGAL BOOT CAMP Mark in U.S. commerce in connection with the goods and services identified in the Registration from the date of issuance, September 2, 2014, through March 3, 2025. The Registration also provides conclusive evidence of the distinctiveness of the subject PARALEGAL BOOT CAMP Mark from the date the Registration was made incontestable, July 28, 2020, through March 3, 2025.

---

[1] Upon information and belief, the attorney of record for the Registration transitioned to an in-house counsel role, but failed to notify Plaintiff of her departure or designate a new attorney of record. Plaintiff had relied on the attorney of record to advise of all future deadlines to file renewal and maintenance documents for the Registration. Plaintiff was surprised to learn the Registration had been cancelled, but intends to secure registration of the Mark once again.

13.    Promptly after discovering the Registration had been cancelled, on March 21, 2025, Plaintiff filed new Application Serial No. 99096856 for the identical mark PARALEGAL BOOT CAMP, for virtually identical services in Class 41, "Educational services, namely, conducting seminars, conferences, workshops and continuing education classes in the field of paralegal education" (the "Application"). Due to the inadvertent cancellation of the Registration, Plaintiff has filed a Request to Make Special to seek expedited examination of the Application. Attached hereto as **Exhibit C** are materials downloaded from the U.S. Patent and Trademark Office's Trademark Status & Document Retrieval online database showing the current status of the Application and the Request to Make Special.

## B. Defendants' Infringing Use

14.    Without Plaintiff's knowledge, long after Plaintiff acquired protectable exclusive rights in its PBC Marks, upon information and belief, Defendants began using the mark, PARALEGAL BOOTCAMP (the "Infringing Mark"), which is identical and virtually identical, respectively, to Plaintiff's PBC Marks, in connection with services identical to and or/closely related to Plaintiff's Services.

15.    On or about August 2, 2023, Defendant Mahajan registered the domain name paralegalbootcamp.us. The Infringing Domain Name consists of Plaintiff's distinctive PBC Marks, excluding the non-distinctive spaces between individual terms, and the country code top-level domain (ccTLD) .us. Moreover, other than the deletion of a dash mark and replacement of the generic top-level domain (gTLD) .com with the ccTLD .us, the Infringing Domain Name is also identical to paralegal-bootcamp.com, which Plaintiff owns and uses to host a website advertising, promoting, and Plaintiff's Services. Upon information and belief, Defendant Mahajan had never used the Infringing Mark, and therefore had no protectable rights or interest therein, as of the date he

6

registered the Infringing Domain Name. True and accurate screenshots showing the public domain name registration records obtained from a WhoIs search for paralegalbootcamp.us are attached hereto as **Exhibit D**.

16.    The website accessible at paralegalbootcamp.us (the "Infringing Website" and the "Infringing Domain," respectively), lists Defendant Mahajan as one of two "Board Members" of Paralegal Bootcamp and identifies him as "Coordinator at Paralegal Bootcamp":



*(Accessible at: [https://paralegalbootcamp.us/board-members/](https://paralegalbootcamp.us/board-members/))*

17.    On or about December 6, 2023, Defendant Mahajan created a Facebook page entitled "Paralegal Bootcamp" (the "Infringing Facebook Page"):



*(accessible at: https://www.facebook.com/usparalegalbootcamp/about_profile_transparency)*

Shortly thereafter, Defendant Mahajan began advertising a paralegal training program under the Infringing Mark. The cover photo of this Infringing Facebook Page features Defendant Mahajan and directs visitors to the Infringing Domain and Infringing Website:



*(Accessible at: https://www.facebook.com/photo/?fbid=122097527096151725&set=a.122097527468151725)*

Upon information and belief, the cover photo of the Infringing Page was updated on the same date the Infringing Website became accessible, on or about December 11, 2023.

18.    Upon information and belief, on or around January 20, 2024, Defendant Mahajan began promoting and providing educational services for paralegals, in the form of online courses, under the Infringing Mark via the Infringing Website. Attached hereto as **Exhibit E** is a true and accurate screenshot of the first post on the Infringing Facebook Page, dated December 13, 2023, which advertises Defendants' paralegal training course, under the Infringing Mark, as commencing on January 20, 2024.

19.    According to the Infringing Website, Defendants provide, under the Infringing Mark, online training programs, including live classes and homework assignments, that are designed to equip participants with the knowledge and skills necessary to work as a paralegal in the United States (the "Infringing Services"). Additionally, Defendants distribute recordings of classes and other course materials to participants, and offer for sale, sell, and distribute recordings of and materials from past iterations of such programs (the "Infringing Goods"; and collectively, the "Infringing Goods and Services"), all under the Infringing Mark, via the Infringing Website. Attached hereto as **Exhibit F** are true and accurate screenshots of select pages from the Infringing Website, showing all of the foregoing.

20.    On or around April 8, 2024, Plaintiff discovered the Infringing Website and learned that Defendant Mahajan had recently begun promoting and providing the Infringing Goods and Services under the Infringing Mark, without Plaintiff's knowledge or consent. Plaintiff immediately attempted to contact Defendant Mahajan via email, using the email address listed in the header and footer (as well as on the "Contact" page) of the Infringing Website, to notify Defendant Mahajan that Plaintiff owns all right, title and interest in and to the PARALEGAL

BOOT CAMP Mark, including the Registration, and that the unauthorized use of PARALEGAL BOOTCAMP on the Infringing Website infringed on Plaintiff's incontestable, exclusive rights in Plaintiff's PBC Marks. Specifically, Plaintiff informed Defendant Mahajan that such use was likely to cause consumer confusion and lead to a mistaken belief that Plaintiff was source of the Infringing Website and the services provided therethrough, and/or that there was some manner of association or affiliation among Plaintiff and Defendant Mahajan. Plaintiff also offered Defendant Mahajan an opportunity to resolve the conflict amicably by immediately ceasing such infringing use. Defendant Mahajan refused to respond.

21.     Just hours later, Plaintiff forwarded their initial email to Defendant Mahajan to his law firm email address to ensure his prompt receipt of the notice of infringement. Defendant Mahajan replied to the forwarded email to confirm receipt. Notwithstanding Plaintiff's incontestable Registration for Plaintiff's PBC Marks, Defendant Mahajan, an immigration attorney, also asserted in his response that PARALEGAL BOOTCAMP was a generic mark and "may be used by anyone." Defendant Mahajan's response also expressly invited Plaintiff to file the instant Complaint. All of the foregoing email exchanges occurred on April 8, 2024. Attached hereto and made a part hereof as **Exhibit G** is a true and correct copy of the email correspondence between Plaintiff and Defendant Mahajan on April 8, 2024.

22.     On or around May 16, 2024, Plaintiff sent Defendant Mahajan a letter via certified mail and email, again advising him of Plaintiff's exclusive rights in and to its PARALEGAL BOOT CAMP Mark, by virtue of its Registration therefor and longstanding use thereof. Plaintiff reiterated the demands made in their April 8, 2024 emails, and further demanded that Defendant Mahajan transfer the Infringing Domain to Plaintiff. Plaintiff informed Defendant Mahajan that they would pursue all available legal remedies if he failed to comply with their demands.  Attached

hereto and made a part hereof as **Exhibit H** is a true and correct copy of the letter Plaintiff sent to Defendant Mahajan on May 16, 2024.

23.     With actual knowledge of Plaintiff's prior rights in the Mark, including its incontestable Registration, Defendant Mahajan continued to advertise, promote, sell, provide and distribute the Infringing Goods and Services under the Infringing Mark. Upon information and belief, Defendant Mahajan has provided at least two live, online paralegal training courses to consumers, and sold recordings and materials from previous iterations of such courses, under the Infringing Mark since receiving Plaintiff's initial notice of infringement on April 8, 2024.

24.     On or around October 28, 2024, with actual knowledge of Plaintiff's presumptively conclusive rights in its Mark, Defendant Mahajan electronically executed and filed articles of organization with the Maryland Department of Assessments & Taxation to form Defendant Paralegal Bootcamp LLC under the laws of the State of Maryland. Defendant LLC adopted and uses the Infringing Mark as its trade name, Paralegal Bootcamp (the "Infringing Trade Name"). Defendant Mahajan is listed as the resident agent for service of process in such articles of organization and the address of the Defendant LLC is the address of the law firm formed and headed by Defendant Mahajan, Mahajan Law LLC. Attached hereto and made a part hereof as **Exhibit I** is a true and correct copy of the articles of organization of Defendant Paralegal Bootcamp LLC that Defendant Mahajan filed with the Maryland Department of Assessments & Taxation on October 28, 2024, and true and accurate screenshots of the public business registration records of Defendant LLC available on the Maryland Business Express website.

25.     Upon information and belief, Defendant LLC has continued the infringement of Plaintiff's PBC Marks in the same manner as Defendant Mahajan had, in his individual capacity, prior to the formation of Defendant LLC. Namely, upon information and belief, since October 28,

2024, the Defendant LLC has been advertising, promoting, selling, providing and distributing the Infringing Goods and Services under the Infringing Mark via, *inter alia*, the Infringing Website and the Infringing Facebook Page. Upon information and belief, the continuity in the advertising and sale of the Infringing Goods and Services is owed to Defendant Mahajan, who, as "Coordinator At Paralegal Bootcamp," continues to control the day-to-day operations of the Defendant LLC.

26.     Upon information and belief, Defendants intend to continue their infringement of Plaintiff's PBC Marks and provide a fourth live, online paralegal training course to consumers, commencing on April 12, 2025. *See* **Exhibit F** at 1.

27.     The services provided by Defendants under the infringing PARALEGAL BOOTCAMP mark are the identical to and/or closely related to the services provided by Plaintiff under its identically and virtually identical PBC Marks.

28.     The goods sold by Defendants under the Infringing PARALEGAL BOOTCAMP Mark are closely related to the services provided by Plaintiff under its identical and virtually identical PBC Marks.

29.     Plaintiff and Defendants offer their respective goods and services to the same classes of consumers, namely, paralegals and prospective paralegals.

30.     Defendants promote and provide their Infringing Goods and Services under the Infringing Mark and Infringing Trade Name via the Infringing Facebook Page and the Infringing Website, accessible at a domain name, namely the Infringing Domain, which secondary domain is comprised solely of each of Plaintiff's PBC Marks.

31.     Defendants' continuing willful and unauthorized use of the Infringing Mark is likely to result in marketplace confusion with Plaintiff and Plaintiff's PBC Marks. For example, in a Google search for Defendants' Infringing Mark, the top three organic search results are

Plaintiff's own websites and YouTube channel, and Defendants' Infringing Website appears immediately below Plaintiff's YouTube channel. In a Google search for Plaintiff's PARALEGAL BOOT CAMP Mark, the top three organic search results are Plaintiff's websites, and again, Defendants' Infringing Website appears immediately below Plaintiff's YouTube channel, as well as above another result for one of Plaintiff's websites. Moreover, a search for Facebook pages containing Defendants' Infringing Mark returns results with Defendants' and Plaintiff's Facebook pages appearing sequentially. Attached hereto as **Exhibit J** are true and accurate screenshots of the aforementioned Google and Facebook search results for the Infringing Mark and Plaintiff's PARALEGAL BOOT CAMP Mark.

## **GENERAL ALLEGATIONS**

32.     Defendants have used and continue to use the infringing PARALEGAL BOOTCAMP mark, trade name, and domain name, despite their actual knowledge of Plaintiff's prior rights in and to its identical and virtually identical PBC Marks and despite Plaintiff's express demand to cease and desist from any use, in connection with goods and services identical to and/or closely related to Plaintiff's Services.

33.     Upon information and belief, Defendants' use of the infringing PARALEGAL BOOTCAMP mark, trade name, and domain name has caused and is likely to continue to cause confusion, mistake, or deception as to the source or origin of Defendants' goods and services, in that the public is likely to believe that Defendants' Infringing Goods and Services are provided by, sponsored by, approved by, licensed by, affiliated with, or in some way legitimately connected with Plaintiff, or indeed are Plaintiff's goods and services, all to Plaintiff's continuing irreparable harm and to Defendants' unearned and unjust benefit.

34.    Such confusion, mistake and deception has deprived and will continue to deprive Plaintiff of its ability to protect the reputation and goodwill Plaintiff has built up in its PBC Marks, thereby damaging Plaintiff.

35.    Since at least as early as April 8, 2024, Defendants have engaged and continue to engage in their infringing conduct intentionally, willfully, and with wanton disregard of Plaintiff's rights.

36.    As a result of Defendants' unauthorized acts, Plaintiff has suffered damages in an amount to be determined at trial, but no less than $1,000,000, as well as enhanced damages, reasonable attorneys' fees, and costs of the action.

37.    As a result of Defendants' actions complained of herein, Plaintiff has suffered irreparable harm, for which there exists no adequate remedy at law.

## COUNT I:
### TRADEMARK INFRINGEMENT OF A FEDERALLY REGISTERED TRADEMARK UNDER THE LANHAM ACT, 15 U.S.C. § 1051 *et seq.*

38.    Plaintiff re-alleges and incorporates paragraphs 1 through 37 as if fully set forth herein.

39.    Plaintiff was the undisputed owner of U.S. Registration No. 4595407, now cancelled, for the mark PARALEGAL BOOT CAMP, for "Educational services, namely, conducting seminars, conferences, workshops and continuing education classes in the field of paralegal education and distributing materials in connection therewith," which resided on the Principal Register and was valid and subsisting as of the date of Defendants' first use of the Infringing Mark through March 3, 2025.

40.    The Registration had been incontestable since July 28, 2020, and therefore constitutes conclusive evidence of Plaintiff's rights in and to Plaintiff's PARALEGAL BOOT CAMP Mark for the registered services from July 28, 2020, through March 3, 2025.

41.    Defendants' Infringing Mark, PARALEGAL BOOTCAMP is virtually identical and therefore confusingly similar to Plaintiffs' PARALEGAL BOOT CAMP Mark.

42.    At all times prior to the inadvertent cancellation of the Registration, Defendants' use of the Infringing Mark for the Infringing Goods and Services was without Plaintiff's approval or authorization.

43.    Defendants made unauthorized, willful and intentional use of the Infringing Mark in connection with the Infringing Goods and Services in a manner that caused and was likely to cause confusion or mistake, or to deceive as to the source or origin of such services.

44.    Since at least as early as April 8, 2024, Defendants engaged in such infringing conduct with wanton disregard of Plaintiff's rights.

45.    Based on the foregoing, Defendants are liable to Plaintiff for trademark infringement under 15 U.S.C. § 1114 from the date of Defendants' first use of the Infringing Mark through March 3, 2025.

46.    As a result of Defendants' violation of 15 U.S.C. § 1114 through March 3, 2025, Plaintiff has suffered damages in an amount to be determined at trial, as well as enhanced damages, reasonable attorneys' fees, and costs of the action.[2]

---

[2] Due to the inadvertent cancellation of the Registration, Plaintiff has filed a Request to Make Special for the Application, and once the Application matures to registration, Plaintiff intends to amend its Complaint to expand its claim for damages with respect to Count I. The cancellation of the Registration due to inadvertent non-renewal does not in any way affect Plaintiff's rights in the PARALEGAL BOOT CAMP Mark. *See* 2 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 20:68 (5th ed.) (Cancellation due to failure to maintain or renew a registration means loss of certain procedural benefits, but does not amount to loss of any rights in the underlying trademark.); *see also Crash Dummy Movie, LLC v. Mattel, Inc.*, 601 F.3d 1387, 94 U.S.P.Q.2d 1315, 81 Fed. R. Evid. Serv. 1261 (Fed. Cir. 2010); *Kemi Organics, LLC v. Rakesh Gupta*, 126 U.S.P.Q.2d 1601 (T.T.A.B. 2018).

## COUNT II:
## UNFAIR COMPETITION, FALSE REPRESENTATION, AND
## FALSE DESIGNATION OF ORIGIN UNDER THE LANHAM ACT, 15 U.S.C. § 1125(a)

47.     Plaintiff re-alleges and incorporates paragraphs 1 through 46 as if fully set forth herein.

48.     Plaintiff's PBC Marks has become uniquely associated with and identifies Plaintiff's Services and has become a valuable source of Plaintiff's goodwill.

49.     Defendants have used, and continue to make unauthorized, willful and intentional use of, the Infringing Mark, Infringing Trade Name, and Infringing Domain Name to advertise, promote, market, sell, provide, and distribute their Infringing Goods and Services in competition with Plaintiff's Services, which constitutes false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a).

50.     Defendants' use of the Infringing Mark, Infringing Trade Name, and Infringing Domain Name creates a false designation of origin, and false or misleading descriptions or misrepresentations of fact and are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of the services or commercial activities of Defendants by Plaintiff. Defendants' acts tend to represent falsely that Defendants' business is legitimately connected with Plaintiff's or emanates from or is authorized, sponsored, or approved by Plaintiff, in violation of 15 U.S.C. § 1125(a).

51.     Since at least as early as April 8, 2024, Defendants have engaged in such wrongful conduct intentionally, willfully, and with wanton disregard of Plaintiff's rights.

52.     Defendants' infringing conduct has caused irreparable and immediate injury to Plaintiff for which Plaintiff has no adequate remedy at law.

53.     As a result of Defendants' violation of 15 U.S.C. § 1125(a), Plaintiff has suffered damages in an amount to be determined at trial, as well as enhanced damages, reasonable attorneys' fees, and costs of the action.

**COUNT III:**
**CYBERSQUATTING UNDER THE LANHAM ACT, 15 U.S.C. § 1125(d)(1)(A)**

54.     Plaintiff re-alleges and incorporates paragraphs 1 through 53 as if fully set forth herein.

55.     Defendant    Mahajan    registered    the    Infringing    Domain    Name, paralegalbootcamp.us, on or about August 2, 2023. The Registration provides conclusive evidence of the distinctiveness of Plaintiff's PARALEGAL BOOT CAMP Mark from July 28, 2020, through March 3, 2025. Accordingly, Plaintiff's PARALEGAL BOOT CAMP Mark was distinctive as of the date Defendant Mahajan registered the Infringing Domain Name.

56.     The Infringing Domain Name is virtually identical and therefore confusingly similar to Plaintiff's PARALEGAL BOOT CAMP Mark because its secondary domain is comprised solely of Plaintiff's PARALEGAL BOOT CAMP Mark. The Infringing Domain Name is also virtually identical to Plaintiff's domain name paralegal-bootcamp.com, at which Plaintiff hosts its website to advertise, promote, market, and sell Plaintiff's Services.

57.     Upon information and belief, Defendant Mahajan first used the Infringing Mark in connection with the Infringing Services several months after registering the Infringing Domain Name, had no protectable rights or interest in or to any portion of the Infringing Domain Name at the time of its registration. Defendant Mahajan has used, and continues to use, the Infringing Website, accessible at the Infringing Domain Name, to advertise, promote, market, sell, provide, and distribute Defendants' Infringing Goods and Services, which directly compete with Plaintiff's Services. Such use is likely to confuse consumers and divert them away from Plaintiff's website

for Defendants' own commercial gain. Such conduct, together with the confusing similarity of the Infringing Domain Name to Plaintiff's distinctive PARALEGAL BOOT CAMP Mark, is indicative of Defendant Mahajan's bad faith intent to profit from the use of Plaintiff's PARALEGAL BOOT CAMP Mark.

58.     Based on the foregoing, Defendant Mahajan is liable to Plaintiff for cybersquatting under 15 U.S.C. § 1125(d)(1)(A).

59.     Since at least as early as April 8, 2024, Defendant Mahajan has engaged in such wrongful conduct intentionally, willfully, and with wanton disregard of Plaintiff's rights.

60.     Defendant Mahajan's infringing conduct has caused irreparable and immediate injury to Plaintiff for which Plaintiff has no adequate remedy at law.

61.     As a result of Defendant Mahajan's violation of 15 U.S.C. § 1125(d)(1)(A), Plaintiff has suffered damages in an amount to be determined at trial, as well as enhanced damages, reasonable attorneys' fees, and costs of the action.

**COUNT IV:**
**COMMON LAW TRADEMARK INFRINGEMENT**

62.     Plaintiff re-alleges and incorporates paragraphs 1 through 61 as if fully set forth herein.

63.     Defendants' acts constitute trademark infringement in violation of the common law of the State of Maryland, because the public is likely to be confused as to the origin of Defendants' goods and services, and is likely to confuse Defendants' services with those of Plaintiff.

64.     Defendants are continuing, and upon information and belief, plan to continue, to make unauthorized, willful, and intentional use of the Infringing Mark, Infringing Trade Name, and Infringing Domain Name in connection with their goods and services in the field of paralegal education, which are marketed to a class of persons overlapping the class of persons for Plaintiff's

services and in the same geographic area.  Unless restrained by this Court, Defendants will continue to infringe on the common law trademark rights of Plaintiff.

65.     Since at least as early as April 8, 2024, Defendants have engaged in such infringing conduct intentionally, willfully, and with wanton disregard of Plaintiff's rights.

66.     Defendants' acts are, and will continue to be, irreparably damaging to Plaintiff unless enjoined by this Court.  Accordingly, Plaintiff has no adequate remedy at law.

**COUNT V:**
**COMMON LAW UNFAIR COMPETITION**

67.     Plaintiff re-alleges and incorporates paragraphs 1 through 66 as if fully set forth herein.

68.     Defendants' wrongful acts constitute common law unfair competition because they operated under a trade name, and used a mark and domain name, that are identical or virtually identical to Plaintiff's PBC Marks to offer and provide goods and services that are the same as or highly similar to Plaintiff's services, thereby identifying themselves as affiliated with Plaintiff when no such affiliation exists.

69.     Defendants' acts constitute unfair competition in violation of the common law of the State of Maryland, because Defendants received profits from the sale of goods and services identical, highly similar to, or highly related to Plaintiff's Services that they would not have received, but for the use of Plaintiff's PBC Marks as a trade name, trademark, service mark, and domain name.

70.     Since at least as early as April 8, 2024, Defendants have engaged in such wrongful conduct intentionally, willfully, and with wanton disregard of Plaintiff's rights.

71.     Defendants' acts are, and will continue to be, irreparably damaging to Plaintiff unless enjoined by this Court.  Accordingly, Plaintiff has no adequate remedy at law.

## COUNT VI:
## <u>PERMANENT INJUNCTION</u>

72.     Plaintiff re-alleges and incorporates paragraphs 1 through 71 as if fully set forth herein.

73.     Defendants' use of the Infringing Mark, Infringing Trade Name, and Infringing Domain Name, and any marks confusingly similar thereto, is likely to cause confusion, mistake, and deception because the public will believe Defendants are associated with Plaintiff or authorized to use such marks.

74.     Unless the Court intervenes to restrain and enjoin Defendants from using a mark, trade name, and domain name that are identical or virtually identical to Plaintiff's PBC Marks, Defendants will continue to use such mark, trade name, and domain name.

75.     Such activities will cause Plaintiff to be irreparably harmed and will deprive Plaintiff of its protected interest in its PBC Marks, and the accumulated goodwill therein generated by Plaintiff's promotion, advertising, and sale of Plaintiff's Services.

76.     Plaintiff has no adequate remedy at law to rectify the harm to Plaintiff's PBC Marks by Defendants' unauthorized use of the Infringing Mark, Infringing Trade Name, and Infringing Domain Name.

77.     The entry of permanent injunctive relief will not adversely affect any third parties and will further the public interest by eliminating the confusion, deception, and infringement, as described herein.

78.     By reason of the foregoing, Defendants should be permanently restrained and enjoined from using the Infringing PARALEGAL BOOTCAMP Mark, Infringing Trade Name, and Infringing Domain Name, or any other marks, trade names, or domain names confusingly

similar thereto, and from otherwise interfering with the rights of Plaintiff in its **PARALEGAL BOOT CAMP** Mark.

**RELIEF REQUESTED AS TO ALL COUNTS**

**WHEREFORE**, Plaintiff respectfully requests:

a)    That Defendants and their officers, directors, agents, owners, employees, representatives, attorneys, and all others acting under or in concert with either of them, be preliminarily and permanently enjoined and restrained from:

    (1)    Using the mark PARALEGAL BOOTCAMP, or any other marks confusingly similar thereto, alone or in combination with other words, as a service mark, trademark, trade name, domain name component, or otherwise to market, promote, advertise, or identify Defendants' goods and services;

    (2)    Otherwise infringing Plaintiff's PBC Marks;

    (3)    Using misleading advertising to suggest endorsement by Plaintiff of Defendants' products and/or services when no such endorsement exists, or unfairly competing with Plaintiff in any manner whatsoever; and

    (4)    Causing a likelihood of injury or injury to business reputation of Plaintiff's distinctive Mark.

b)    An order holding that Defendants' activities complained of herein constitute federal trademark infringement; federal unfair competition, false representation, and false designation of origin; federal cybersquatting; common law trademark infringement under Maryland law; and common law unfair competition under Maryland law.

c)    An order directing Defendant Mahajan to transfer the domain name paralegalbootcamp.us to Plaintiff within fifteen (15) days after service of the injunction.

d)    An order directing Defendants to file with this Court and to serve on Plaintiff within thirty (30) days after service of the injunction a report, in writing and under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction and any further orders of this Court.

e)    Pursuant to 15 U.S.C. §§ 1114, 1117, 1125 and the common law, Plaintiff be awarded its damages, Defendant's profits, and Plaintiff's attorneys' fees and costs, and that this award of damages be trebled.

f)    That Defendants and their agents, employees, representatives, and all others acting under their direction or control or in concert with them, or any of them, be required to recall and deliver up and destroy all literature, advertising, promotional materials, and other material bearing the Infringing PARALEGAL BOOTCAMP Mark, or any other marks confusingly similar thereto.

g)    Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: April 1, 2025                Respectfully submitted,

By:   */s/ Terry J. Wikberg*
       Terry J. Wikberg (MD Bar No. 17978)
       Daniel C. Neustadt (DC Bar No. 1023576)
       Lauren Caverly Pratt (TN Bar No. 040362)
       ***Pro Hac Vice Motions Forthcoming***
       HOLLAND & KNIGHT LLP
       800 17th Street, NW, Suite 1100
       Washington, D.C. 20006
       Telephone: (202) 955-3000

       511 Union Street, Suite 2700
       Nashville, T.N. 37206
       (615) 244-6380

       terry.wikberg@hklaw.com
       dan.neustadt@hklaw.com
       lauren.pratt@hklaw.com

       *Attorneys for Plaintiff PRM Group, Inc.*